UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

---------------------------------------------------------------------------x
SYCAMORE IP HOLDINGS LLC,                             :
                                                      :   C.A. No. _____
                            Plaintiff,                :
                                                      :
                v.                                    :
                                                      :
                                                      :   JURY TRIAL DEMANDED
ABB, INC.; and ABB Ltd.,                              :
                                                      :
                            Defendants.               :
                                                      :
                                                      :
---------------------------------------------------------------------------x

## COMPLAINT

Plaintiff Sycamore IP Holdings LLC ("Sycamore"), as for its complaint of patent infringement in this matter, hereby alleges as follows:

### NATURE OF THE ACTION

This is an action for patent infringement of United States Patent No. 6,952,405 (the "'405 Patent") under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, seeking damages and injunctive and other relief under 35 U.S.C. § 281, *et seq.*

### PARTIES

1. Plaintiff Sycamore is a Delaware limited liability company with its principal place of business at 2700 Plumas Street #120, Reno, Nevada 89509.

2. Upon information and belief, Defendant Defendant ABB, Inc. is a Delaware corporation with corporate headquarters a 12040 Regency Parkway, Cary, North Carolina 27518.

3. Upon information and belief, Defendant Defendant ABB Ltd. is a European

1

company with its corporate headquarters at Affolternstrasse 44, CH-8050 Zurich, Switzerland.

4. Upon information and belief, ABB, Inc. and ABB Ltd. (collectively "Defendants") and/or their subsidiaries or affiliates also maintain numerous offices in Texas, including: 8310-1 N. Capital of Texas Hwy., Austin; 1109 Howard Drive, Deer Park; 800 Town and Country Blvd., Houston; 13609 Industrial Road, Houston; 3700 West Sam Houston Parkway South, Houston; 222 West Las Colinas Blvd., Irving; and 1601 Industrial Blvd., Sugar Land.  For example, upon information and belief, Defendants' subsidiary Ventyx, Inc. is registered to do business in Texas and maintains offices in Austin, Houston, and Sugar Land, Texas.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action concerns the infringement of a United States patent.

7. Upon information and belief, Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to at least each of their substantial business in this forum, directly and/or through intermediaries, including: (i) committing at least a portion of the acts of infringements alleged herein, and (ii) regularly doing or soliciting business in the State of Texas and in this Judicial District, engaging in other persistent courses of conduct in this district including maintaining continuous and systematic contacts in Texas and in this Judicial District, purposefully availing themselves of the privileges of doing business in Texas and in this Judicial District, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District. Upon information and belief, this Court also has personal jurisdiction over Defendants and/or

their subsidiaries or affiliates because they are foreign entities registered to do business in the State of Texas, and thus it has purposely availed themselves of the privileges and benefits of the laws of Texas.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this District, and Defendants have committed and continue to commit acts of patent infringement in this District. For example, upon information and belief, Defendants have used, sold, offered for sale, and/or imported infringing products and services in this District.

## THE '405 PATENT

9. Sycamore is the owner by assignment of the '405 Patent, entitled "Coding Scheme Using a Transaction Indicator for Signal Transmission in Optical Communications Networks," which the United States Patent & Trademark Office duly issued on October 4, 2005. The '405 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. A true and correct copy of the '405 Patent is attached hereto as Exhibit A.

## BACKGROUND

10. Dr. Danny Tsang and Dr. Murat Azizoglu are the named inventors of the '405 Patent.

11. The '405 Patent was originally assigned to Sycamore Networks, Inc. ("Sycamore Networks") of Chelmsford, Massachusetts. Sycamore Networks was once a pioneer company for making advanced optical networking equipment.

12. Dr. Murat Azizoglu is the President and a Managing Member of Sycamore. Previously, Dr. Azizoglu served as a Chief Network Architect of Sycamore Networks.

13. In February 1998, Sycamore Networks was founded by a group of data

networking industry veterans to develop sophisticated optical networking equipment for the then emerging fiber-optics data networks industry. Sycamore Networks launched its first products in March 1999.

14. Sycamore Networks went public on October 22, 1999 and became a Wall Street sensation as it "closed with the biggest market value ever achieved by an Internet-related company in its first day of trading"[1] and posted "the third-best opening result ever."[2] Sycamore Networks reached a market capitalization of about $14.4 billion after its first public trading day, and later reached a market capitalization of about $45 billion in March 2000.

15. Dr. Azizoglu joined Sycamore Networks in 1999 as a Senior Scientist and was soon promoted to Chief Network Architect. After obtaining his Ph.D. in Electrical Engineering from the Massachusetts Institute of Technology ("MIT") in 1991, Dr. Azizoglu served as an Assistant Professor at the Department of Electrical Engineering and Computer Science of George Washington University from 1991 to 1994. He then joined the Department of Electrical Engineering of the University of Washington, where he became a tenured Associate Professor.

16. Dr. Danny Tsang was a visiting professor on leave from the Hong Kong University of Science and Technology ("HKUST") when he worked at Sycamore Networks from 2000 to 2001. Dr. Tsang is currently a full professor at HKUST and a fellow of the Institute of Electrical and Electronics Engineers ("IEEE"). Dr. Tsang obtained his Ph.D. in Electrical Engineering from the University of Pennsylvania in 1989.

17. Around the late 1990s, the data networking industry faced a challenging and technically complex problem of how to properly and efficiently map the data traffic coming from a variety of data networks (e.g., Gigabit Ethernet, Fibre Channel, FICON, and ESCON) onto an

---

[1] *See* http://news.cnet.com/Sycamore-shares-soar-in-stunning-debut/2100-1033_3-231775.html
[2] *See* http://money.cnn.com/1999/10/22/news/sycamore/

outgoing synchronous optical network (e.g., SONET), in order to transport the incoming data traffic across the outgoing optical network. An important aspect of this problem is how to timely and transparently transport both the control information and the data information within the incoming traffic across the outgoing network without incurring excessive traffic overhead.

18.     In 2000, drawing on and extending Dr. Azizoglu's earlier work on data transport networks, Drs. Azizoglu and Tsang conceived and designed an elegant new transcoding scheme that takes advantage of some inherent line-code properties of certain data networks such as Gigabit Ethernet, Fibre Channel, FICON, and ESCON. This new transcoding scheme designed by Drs. Azizoglu and Tsang not only addressed the above mentioned technical problem faced by the data networking industry, but also provided the benefit of elegantly reducing the overall data rate of the incoming traffic.

19.     Sycamore Networks filed a provisional patent application for this invention on December 5, 2000, and later filed a formal patent application on February 27, 2001, which would ultimately issue as the '405 patent on October 4, 2005.

20.     Defendants import, make, use, offer to sell, and sell their FOX660 product. Defendants commit such acts in the State of Texas and in this judicial district.

## COUNT 1:  INFRINGEMENT OF THE '405 PATENT

21.     Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

22.     Upon information and belief, Defendants have been and are currently directly infringing one or more claims of the '405 Patent, either literally or under the doctrine of equivalents, by importing, making, using, offering to sell, and/or selling, without authority, infringing instrumentalities, including without limitation Defendants' FOX660 product. Defendants' direct infringement includes, without limitation, (i) making and using the apparatus

of at least claim 11, and (ii) practicing the method of at least claim 1, including by Defendants' making, using, operating, and/or testing the FOX660 product.

23. Defendants further contribute to and/or induce infringement of the claims of the '405 Patent. The direct infringement induced and contributed to by Defendants includes at least the operation of the FOX660 product by end users, which may include one or more of the other Defendants. Defendants know that these users are infringing the '405 Patent at least by virtue of the filing of this Complaint and Defendants have specific intent to encourage these users to infringe the '405 Patent by practicing all of the claim limitations of at least one claim of the '405 Patent. Defendants induce these users to operate the FOX660 product, knowing that these acts constitute infringement of the '405 Patent and with specific intent to encourage those acts and encourage infringement.

24. Upon Defendants' gaining knowledge of the '405 Patent, it was, or became, apparent to Defendants that the manufacture, sale, importing, offer for sale, testing and use of their FOX660 product resulted in infringement of the '405 Patent. Upon information and belief, Defendants have continued to engage in activities constituting inducement of infringement, notwithstanding their knowledge (or willful blindness thereto) that the activities they were inducing result in infringement of the '405 Patent. For example, Defendants are inducing infringement of the '405 Patent by, among other things, knowingly and with intent, actively encouraging their customers, suppliers, users, agents and/or affiliates to make, use, sell and/or offer for sale Defendants' FOX660 product in a manner that constitutes infringement of one or more claims of the '405 Patent, knowing that such activities infringe the '405 Patent.

25. Defendants encourage direct infringement of the '405 Patent at least by widely publicizing their infringing FOX660 product.[3]

26. By inducing Defendants' customers', suppliers', users', agents' and/or affiliates' use of the apparatuses and methods claimed in the '405 Patent, including through their use of the aforementioned FOX660 product, Defendants have been and are now indirectly infringing under 35 U.S.C. § 271(b) one or more claims of the '405 Patent, either literally or under the doctrine of equivalents.

27. Upon information and belief, upon receiving knowledge of the '405 Patent (at least since the filing date of this Complaint) Defendants are contributing to the infringement of the '405 Patent by, among other things, knowingly and with intent, actively encouraging their customers, suppliers, agents, users and/or affiliates to make, use, sell and/or offer for sale Defendants' FOX660 product in a manner that constitutes infringement of one or more claims of the '405 Patent.  There are no substantial uses of Defendants' FOX660 product that do not infringe one or more claims of the '405 Patent.

28. By contributing to Defendants' customers', suppliers', agents', users' and/or affiliates' use of the apparatuses and methods claimed in the '405 Patent, including through their use of Defendants' FOX660 product, Defendants have been and are now indirectly infringing under 35 U.S.C. § 271(c) one or more claims of the '405 Patent, either literally or under the doctrine of equivalents.

29. As a result of Defendants' unlawful infringement of the '405 Patent, Sycamore

---

[3] *See, e.g.*, http://new.abb.com/network-management/communication-networks/optical-networks/fox660 and http://www05.abb.com/global/scot/scot221.nsf/veritydisplay/7aa57da3cae70c90c1257b51002782a5/$file/ABB_13_FOX660_multiservice_utility_multiplexer_130416.pdf.

has suffered and will continue to suffer damage.  Sycamore is entitled to recover from Defendants the damages adequate to compensate for such infringement, which have yet to be determined.

30. On information and belief, Defendants will continue to infringe the '405 Patent unless and until they are enjoined by this Court.

31. Defendants, by way of their infringing activities, have caused and continue to cause Sycamore to suffer damages in an amount to be determined at trial.  Sycamore has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are enjoined from their infringement of the '405 Patent, Sycamore will suffer irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Sycamore respectfully requests that this Court enter judgment in its favor as follows:

A. Holding that Defendants have directly infringed, literally and/or under the doctrine of equivalents, the claims of the '405 Patent;

B. Holding that Defendants have indirectly infringed, literally and/or under the doctrine of equivalents, the claims of the '405 Patent;

C. Permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents and all others acting in concert or privity with any of them from infringing, inducing the infringement of, or contributing to the infringement of the '405 Patent;

D. Awarding to Sycamore the damages to which it is entitled under 35 U.S.C. § 284 for Defendants' past infringement and any continuing or future infringement up until the date

Defendants are finally and permanently enjoined from further infringement, including compensatory damages;

E.	Declaring this to be an exceptional case and awarding Sycamore attorneys' fees under 35 U.S.C. § 285;

F.	Awarding Sycamore costs and expenses in this action;

G.	Awarding Sycamore pre- and post-judgment interest on its damages; and

H.	Awarding Sycamore such other and further relief in law or in equity as this Court deems just and proper.

## JURY DEMAND

Sycamore, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any and all issues so triable by right.

Dated: February 20, 2015                                              Respectfully submitted,

By: */s/Andrew W. Spangler*
Andrew W. Spangler
TX SB#24041960
Aarika K. McCloskey
TX SB# 24088766
**SPANGLER LAW, P.C.**
208 N. Green St., Suite 300
Longview, TX 75601
Telephone (903) 753-9300
Facsimile (903) 553-0403
spangler@spanglerlawpc.com
aarika@spanglerlawpc.com

OF COUNSEL:

ERIC BERGER
Mark Raskin
Robert Whitman

**MISHCON DE REYA NEW YORK LLP**
750 Seventh Ave., 26th Floor
New York, NY 10019
TELEPHONE (212) 612-3279
FACSIMILE (212) 612-3297
robert.whitman@mishcon.com
mark.raskin@mishcon.com
Eric.Berger@mishcon.com

*ATTORNEYS FOR PLAINTIFF*
*SYCAMORE IP HOLDINGS LLC*